IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02030-PAB-MDB

JEREMY FISHER,

    Plaintiff,

v.

MOSES ANDRE STANCIL, CDOC EXECUTIVE DIRECTOR,
LEONARD WOODSON III, CDOC ASSISTANT DIRECTOR OF CLINICAL SERVICES,
AMANDA RETTING, CO SOTMP DIRECTOR, AND
KIMBERLY KLINE, CO CHAIRPERSON OF SOMB,

    Defendants.

## DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF NO. 9) UNDER RULES 12(B)(1) AND 12(B)(6)

Defendants Moses 'Andre' Stancil, Leonard Woodson, III, Amanda Retting, and Kimberly Kline ("Defendants"), by and through their counsel, the Colorado Attorney General, respectfully submit this partial motion to dismiss Plaintiff's Second Amended Complaint at ECF No. 9 (the "Complaint").[1] Specifically, Defendants move to dismiss all claims against Defendant Kline under Rule 12(b)(1), and the equal protection claim against all Defendants under Rule 12(b)(6).

---

[1] Defendants note that although the issue does not appear to have been addressed by the Tenth Circuit, the overwhelming weight of cases — including from the District of Colorado — hold that where Defendants move to dismiss some (but not all) of the claims against them, they need not answer the remaining claims until the motion to dismiss has been resolved. *See Bd. of Cnty. Comm'rs Cnty. of La Plata, Colo. v. Brown Grp. Retail, Inc.*, No. 08-cv-00855-LTB-KMT, 2008 WL 4527736, at *1 (D. Colo. Oct. 3, 2008) (collecting cases from other districts); *see also Talbot v. Sentinel Ins. Co., Ltd.*, No. 2:11-cv-01766-KJD-CWH, 2012 WL 1068763, at *4 (D. Nev. Mar. 29, 2012) (collecting cases). However, if the Court disagrees with the foregoing authorities, Defendants move in the alternative under Federal Rule of Civil Procedure 6(b)(1)(A) for an extension of time to submit an answer or other responsive pleading to the claims that are

## PRELIMINARY STATEMENT

Fisher is an inmate currently incarcerated at the Fremont Correctional Facility ("FCF") in the custody of the Colorado Department of Corrections ("CDOC"). (ECF No. 9, at 2). He filed the Complaint pursuant 42 U.S.C. § 1983 asserting that Defendants, in their official capacities, violated his Fourteenth Amendment rights to procedural due process (Claim One), substantive due process (Claim Two), and equal protection (Claim Three) with respect to accessing sex offender treatment. (*Id.* at 3-6).

Fisher alleges that, in 2014, he was sentenced under the Colorado Sex Offender Lifetime Supervision Act of 1988 ("SOLSA"), Colo. Rev. Stat. §§ 18-1.3-1001 to 1012. (*Id.* at 7). According to Fisher, SOLSA requires that he undergo sex-offender treatment as part of his sentence. (*Id.* (citing § 18-1.3-1004(3), C.R.S. 2023)). He asserts that he must successfully progress in CDOC's Sex Offender Treatment and Monitoring Program ("SOTMP") to be eligible for parole. (*Id.* (citing § 18-1.3-1006(1)(a), C.R.S. 2023)).

Fisher further asserts that he became eligible for parole in January 2023, but because he has not been been provided an opportunity to participate in SOTMP, he has been denied parole twice. (*Id.* at 7, ¶ 9; 8, ¶¶ 11-12). He contends that Defendants have not been transparent about the length of the SOTMP waiting period he faces. (*Id.* at 10, ¶ 25). He also asserts that, although he has an impeccable disciplinary record and a low risk-assessment score, he fears that he may never get treatment because there are fewer facilities and staff offering treatment now than in

---

not addressed in this Partial Motion to Dismiss of up to and including fourteen days after the date on which the Court resolves this Motion.

2018. (*Id.* at 8, ¶ 9; 10, ¶ 24). Fisher asserts that Defendants have failed to "provide any meaningful process by which offenders will be prioritized for treatment." (*Id.* at 6).

At the same time, Fisher admits that CDOC enacted Administrative Regulation (AR) 700-19(IV)(E)(1) to govern who will be given priority for admission to SOTMP.[2] (*Id.* at 9, ¶ 17 & n.4). He asserts that AR 700-19 dictates that "prisoners who have not taken the SOTMP will be given priority over the prisoners who have." (*Id.*). He further acknowledges that CDOC officials maintain a "Global Referral List" ("GRL") to prioritize inmates because there are a limited number of treatment slots available. (*Id.*). Fisher alleges that the GRL is a "flawed", "broken," and "antiquated" method of prioritizing inmates for SOTMP. (*Id.* at 7, ¶ 5; 9, ¶ 19).

The crux of Fisher's equal protection claim is that due to Defendants' reliance on the "flawed" GRL to prioritize inmates for admission to SOTMP, inmates who have previously participated in SOTMP and inmates who have not yet reached their parole eligibility date ("PED") have been admitted to SOTMP while Fisher has not. (*Id.* at 8-9, ¶¶ 14, 18). Fisher also

---

[2] Although Fisher cites to AR 700-19(IV)(E)(1), it appears he intends to refer to AR 700-19(IV)(D)(1). As of July 1, 2022, the prioritization of offenders for entry into the SOTMP is found at section (IV)(D)(1), while section (IV)(E)(1) addresses the way the SOTMP team determines treatment recommendations and individualized treatment goals. *See* AR 700-19, *Sex Offender Treatment and Monitoring Program,* at 4, https://drive.google.com/file/d/1gjsCh5b1eeDM8uI-aQkQzWRrEwLVj28s/view.

This court may take judicial notice of CDOC regulations. *See Reynolds v. Colo. Dep't of Corr.*, No. 12-cv-02558-PAB-KMT, 2015 WL 5168783, at *2 n.4 (D. Colo. Sept. 3, 2015) (taking judicial notice of AR 850-04). Additionally, because Fisher refers to AR 700-19 and this regulation is central to the Complaint, it may be considered in a Rule 12(b)(6) motion. "When a document is referred to in the complaint and is central to the plaintiff's claim, the court has discretion to consider the document as part of the pleadings." *U.S. Olympic Comm. v. Amer. Media, Inc.*, 156 F. Supp. 2d 1200, 1204 (D. Colo. 2001) (citing *Prager v. LaFaver*, 180 F.3d 1185, 1188-89 (10th Cir. 1999)).

3

alleges that, in early 2021, "due to Covid-19 exceptions," Defendants allowed "many offenders to access SOTMP up to four-years prior to their PED" and those offenders are "slow-rolling the program," impliedly preventing the Fisher from being admitted to SOTMP. (*Id.* at 9, ¶ 22).

Defendants seek dismissal of all claims against Defendant Kline under Rule 12(b)(1) because they are barred by the Eleventh Amendment. In addition, they seek dismissal of Fisher's equal protection claim against them under Rule 12(b)(6) because Fisher fails to allege sufficient facts to support an inference that he is being denied equal protection under the law.

## STANDARD OF REVIEW

A court may dismiss a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The determination of a court's subject-matter jurisdiction is a threshold question of law. *Madsen v. United States ex rel. U.S. Army Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). The party invoking a court's jurisdiction bears the burden of proof. *Marcus v. Kansas Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999). If the opposing party challenges the jurisdiction of the court as a matter of law, the court must accept the factual allegations as true and determine whether those facts state a claim over which the court has jurisdiction. *Amoco Prod. Co. v. Aspen Grp.*, 8 F. Supp. 2d 1249, 1251 (D. Colo. 1998).

A court may also dismiss a complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. To avoid dismissal, a complaint must set forth factual allegations that, when taken as true, establish a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

4

for the misconduct alleged." *Id.* Where the facts pled are "merely consistent with" liability, the complaint "stops short of the line between possibility and plausibility." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 557 (2007)). Conclusory allegations are insufficient to overcome a Rule 12(b)(6) motion. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

Although the factual allegations in the complaint must be accepted as true and are construed in the light most favorable to the plaintiff, a court cannot assume the role of advocate for a *pro se* litigant. *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991). A broad reading of the complaint does not relieve the plaintiff of the burden of alleging facts sufficient to state a claim for relief. *Id.*

## ARGUMENT

### I. Fisher's claims against Kline are barred by the Eleventh Amendment.

Fisher sues Kline in her official capacity as chair of the SOMB, seeking declaratory and injunctive relief. (ECF No. 9, at 3-6, 11-12). The Eleventh Amendment bars Fisher's claims against Kline, so the Court lacks jurisdiction over them.

Under the Eleventh Amendment, a state is not subject to suit by its own citizens in federal court absent a waiver of the state's sovereign immunity. *Mt. Healthy City Sch. Dist. Bd. of Educ. V. Doyle*, 429 U.S. 274, 280 (1977). "[T]he Eleventh Amendment bars a suit brought in federal court by the citizens of a state against the state or its agencies, and applies 'whether the relief sought is legal or equitable.'" *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995) (citations omitted). Eleventh Amendment immunity applies to § 1983 suits. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). The Eleventh Amendment "confers total immunity from suit, not merely a defense to liability." *Ambus v. Granit Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir.

5

1993).” It therefore “constitutes a bar to the exercise of federal subject matter jurisdiction.” *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000).

The doctrine of *Ex parte Young*, 209 U.S. 123, 158-59 (1908), provides an exception to Eleventh Amendment immunity for "official-capacity actions for prospective relief." *Will*, 491 U.S. at 71 n.10. This exception, however, is not applicable to Fisher's official-capacity claims for declaratory and injunctive relief against Kline. "Under *Ex parte Young*, the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *Finstuen v. Crutcher*, 496 F.3d 1139, 1151 (10th Cir. 2007). The *Ex parte Young* "exception applies so long as the defendant officer has 'some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *Chamber of Commerce of U.S. v. Edmonson*, 594 F.3d 742, 760 (10th Cir. 2010) (quoting *Ex parte Young*, 209 U.S. at 157). Thus, unless Fisher provides plausible allegations that Kline had some duty to enforce CDOC regulations and alleged practices, Eleventh Amendment immunity applies to bar Fisher's requests for prospective relief from Kline.

Fisher has not shown and cannot show that Kline, as chair of SOMB, has any authority with respect to enforcing CDOC policy with respect to the SOTMP for two reasons. First, he cannot demonstrate that SOMB has any enforcement authority over the SOTMP. SOMB is an entity statutorily charged with developing, prescribing, and revising standards associated with sex offender identification, evaluation, treatment, and progress in treatment. C.R.S. § 16-11.7-103(4). By contrast, SOTMP is the specialized sex offender treatment program administered by CDOC for CDOC offenders. AR 700-19, at 1; *see also Allen v. Clements*, 930 F. Supp. 2d 1252,

6

1260 (D. Colo. 2013) (noting that treatment required by SOLSA is "administered by the SOTMP"). SOTMP treatment must conform to the standards created by SOMB, but SOMB does not perform treatment. *See* C.R.S. § 16-11.7-102(4). Thus, while SOMB may promulgate the standards underlying the SOTMP, it does not enforce any provisions of AR 700-19, including CDOC's prioritization of inmates for sex offender treatment. *See Bertrand v. Kopcow*, 199 F. Supp. 3d 1278, 1285 (D. Colo. 2016) (dismissing SOMB members from suit seeking injunction to prohibit enforcement of a SOMB standard because SOMB is the promulgating authority and not the enforcing authority: "Thus, there appears to be nothing to enjoin – the promulgation is a historical fact, and the regulations are on the books. Nor could the Court find any authority permitting it to order the SOMB to repeal the challenged regulations."). Fisher's targeting of SOMB for an injunction against the enforcement of CDOC policy is not within the *Ex parte Young* exception and therefore such a claim is barred under the Eleventh Amendment.

Second, even if Fisher could somehow show that SOMB, through promulgation of general standards, was responsible for enforcement of CDOC policies concerning access to and prioritization of SOTMP treatment, he still fails to allege facts supporting that Kline, as SOMB chair, has any responsibility in developing SOMB standards. Colorado law provides that only the SOMB *board*, and not its individual members, has the statutory power to develop standards and guidelines. C.R.S. § 16-11.7-103(4). SOMB board members carry out their duties as a group. *Id.* Fisher's conclusory assertions that Kline, as SOMB chair, is "personally responsible for all public policies, guidelines, systems and standards with regards to sex offenders" (ECF No. 9, at 3-6) is insufficient to support an official-capacity claim against her under *Ex parte Young*. *See Barrett v. Univ. of New Mexico Bd. of Regents*, 562 F. App'x 692, 694 (10th Cir. 2014) (finding

7

*Ex parte Young* exception inapplicable to plaintiff's claims against board members seeking to enforce the ADA where plaintiff's "general allegations of responsibility to enforce the ADA are insufficient because individual Board members are not empowered to act individually, but must act as 'a body corporate'" under state law).

Fisher's claims against Kline in her official capacity as SOMB chair are barred by the Eleventh Amendment. The Court therefore lacks subject-matter jurisdiction over all of Fisher's claims against Kline and should dismiss them under Rule 12(b)(1).

## II. Fisher fails to state a claim for relief against the Defendants under the Equal Protection Clause of the Fourteenth Amendment.

Defendants respectfully move to dismiss Claim Three because Fisher fails to allege sufficient facts to support an inference that they are violating his right to equal protection under the law.

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Equal protection of the laws "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Different types of equal protection claims require different standards of review. Thus, "[a] claim that a state actor discriminated on the basis of a suspect (e.g., race), quasi-suspect (e.g., gender), or a non-suspect classification calls for strict, intermediate, or rational basis scrutiny, respectively." *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011).

Where, as here, a plaintiff does not assert that he has been deprived of a fundamental right or that he is part of suspect or quasi-suspect class, he must demonstrate that (1) he has been

treated differently that those with whom he is similarly situated, *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996); (2) such disparate treatment was the result of intentional or purposeful discrimination, *Harris v. Rae*, 448 U.S. 297, 323 n.26 (1980); and (3) disparate treatment was not justified by a rational connection to a legitimate state interest. *Kleinsmith v. Shurtleff*, 571 F.3d 1033, 1047 (10th Cir. 2009); *Mackey v. Hilkey*, No. 21-cv-01226-WJM-NRN, 2021 WL 8441551, at *4 (D. Colo. Dec. 10, 2021) (evaluating an equal protection claim by a sex offender who was denied parole under a rational basis standard); *Hines v. Addison*, 117 Fed. App'x 713, 715 (10th Cir. 2004) (noting that sex offenders are not a suspect class). Fisher's Complaint does not satisfy any of these criteria.

### A.     Fisher has not adequately alleged that he was treated differently than similarly situated inmates.

Fisher fails to allege plausible, non-conclusory facts supporting the assertion that he is being treated differently from similarly situated individuals in violation of his right to equal protection under the law.

Where a plaintiff does not allege that he is a member of a particular class, his equal protection claim falls under the rubric of a "class-of-one" claim, which the U.S. Supreme Court recognized in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Courts have approached class-of-one claims "with caution, wary of 'turning even quotidian exercises of government discretion into constitutional causes.'" *Id*. at 1216 (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1209 (10th Cir. 2006)). As the Tenth Circuit has explained, "the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004). "These concerns are

magnified with challenges to low-level government decision-making, which often involves a great deal of discretion. . . . If even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed." *Kansas Penn Gaming, LLC, v. Collins*, 656 F.3d 1210, 1216-17 (10th Cir. 2011). Accordingly, "class-of-one claims are rarely successful and plaintiffs must meet exacting standards to prevail." *Oakley v. Raemisch*, Civil Action No. 14-cv-03000-CMA-MJW, 2017 WL 3425107, at *4 (Aug. 8, 2017).

For this reason, the "similarly situated" element is particularly important in a class-of-one claim. *Jennings*, 383 F.3d at 1213. A plaintiff comparing his treatment to the treatment of others must show that those who received different treatment were "similarly situated in *every material respect*." *Kansas Penn Gaming*, 656 F.3d at 1216 (quoting *Jicarilla Apache Nation*, 440 F.3d at 1210) (emphasis added). He must provide *specific and detailed* accounts of the nature of the preferential treatment alleged. *Jennings*, 383 F.3d at 1214. Even slight differences in inmates' histories will make their situations distinguishable, especially where different treatment could legitimately be based on a number of different factors. *Kansas Penn Gaming*, 656 F.3d at 1218; *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (noting it was "clearly baseless" to claim that there are other inmates who are similar in every relevant respect where CDOC might classify inmates differently because of slight differences in their histories or varying risks of future misconduct).

AR 700-19(IV)(D)(1) identifies several non-exclusive factors that may influence how an inmate is prioritized for enrollment in SOTMP, including: "(a) Parole eligibility date; (b) Risk for sexual recidivism; (c) Prior SOTMP treatment opportunities; (d) Institutional behavior." AR 700-19(IV)(D)(1). In addition, inmates may receive "treatment qualifiers" that make them lower

10

priority or render them temporarily unable to participate because they first need treatment for a medical or mental health condition. AR 700-19(IV)(A)(8)-(9). Moreover, different "treatment tracks" for different groups of inmates are offered according to the risk for sexual recidivism, gender, age, native language, abilities, and individual needs. AR 700-19(IV)(F).

Fisher relies on the bare assertion that some inmates who had prior treatment opportunities and some inmates who have not yet reached their PED have been admitted to treatment, while he has not. (ECF No. 9, *Id*. at 8-9, ¶¶ 14, 18). However, he does not set forth any facts concerning whether these unidentified inmates are similarly situated to him in *any* respect, let alone in all material respects. This includes, but is not limited to, whether (1) these other inmates pose the same risk for sexual recidivism that he does; (2) their institutional behavior is better or worse than his; (3) they had been previously kept out of SOTMP by low priority designations, medical issues, or mental health issues which have been resolved; (4) they were on the same treatment track as Fisher; or (5) they were of a different gender or age than him, spoke a different language, or are disabled in a manner Fisher is not. These differences are crucial when evaluating Fisher's class-of-one claim, given that AR 700-19 expressly acknowledges that these factors affect an inmate's priority for admission to SOTMP.

Courts routinely dismiss equal protection claims where a plaintiff makes only conclusory allegations that he is "similarly situated" with others who have received different treatment. *See, e.g., Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (inmates were not similarly situated where plaintiff's request to use defendant's phone to call his ill father was denied but other inmate was allowed to use the prison phone to call his pregnant wife); *Brown*, 662 F.3d at 1173 (allegations of differential treatment were too conclusory because the plaintiff did not

11

"allege facts about the particular person or persons who were treated differently than him"). Because Fisher's assertions are based solely on a conclusory assertion that he is similarly situated to other groups of inmates, he fails to plausibly state a claim and his equal protection claim must be dismissed.

      **B. Fisher has not adequately alleged that Defendants acted with discriminatory intent.**

Moreover, Fisher has not alleged any facts to support an inference that Defendants acted with discriminatory intent. He alleges only that he is "not being provided the opportunity to participate in sex offender treatment in CDOC" due to the Defendants' use of "a deeply flawed and antiquated prioritizing system (Global Referral List)" that "flo[u]ts" SOLSA. (ECF No. 9, at 7, ¶¶ 4-5). However, he does not specify why he believes the GRL violates SOLSA or identify what makes the GRL an inherently flawed system. He also asserts that the Defendants "have made a conscious decision not to remedy" the GRL "situation," but he does not describe any conduct that indicating that the Defendants' have refused to remedy problems. (*Id.* at 7, ¶ 5).

Instead, he implies that the GRL is broken because AR 700-19 "states that prisoners who have not taken the SOTMP will be given priority over prisoners who have." (*Id.* at 9, ¶ 17). A review of the relevant regulation reveals that it states no such thing; rather, AR 700-19 provides that prior SOTMP treatment opportunities constitute one of several factors that play a role in prioritization for treatment. *See* AR 700-19(IV)(D)(1). Further, he alleges that the GRL is "broken" because "it has been unable to provide treatment to offenders within a reasonable period of time." (*Id.* at 9, ¶ 19). But the GRL is a prioritization system implemented to manage CDOC's limited resources according to the factors set forth in applicable regulations. (*Id.* at 7, ¶ 5). It can only prioritize the limited resources CDOC has. (*Id.* at 9, ¶ 17). It cannot create

additional resources so that all inmates needing SOTMP may be quickly admitted at the time of their choosing.

In fact, Fisher's assertion that Defendants have relied on the GRL to prioritize *all* inmates amounts to an admission that Defendants have not singled Fisher out for discrimination. (*Id.* at 9, ¶¶ 5, 17). As a matter of common sense, when multiple factors are used to prioritize each new and existing inmates in the system, an inmate's place on the list is likely to change over time. The consequence of Defendants' reliance on the GRL is "that when [a] prisoner reaches the top of the list, he will be admitted to SOTMP." (*Id.* at 9, ¶ 17). As such, Fisher appears to acknowledge that priorities for treatment are algorithmically determined and cannot be the result of discriminatory animus on the part of Defendants.

Because Fisher has not alleged any facts to support the conclusion that Defendants acted with discriminatory intent, his equal protection claim fails.

### C. Fisher has not adequately alleged that there is no rational basis for the challenged conduct.

Finally, Fisher has not adequately alleged that the Defendants lacked a rational basis for the challenged conduct.

When applying a rational basis analysis, courts examine whether "any reasonably conceivable state of facts" could justify differential treatment, and they will only declare government conduct unconstitutional where differential treatment "rests on grounds wholly irrelevant to . . . the state's objective." *City of Herriman v. Bell*, 590 F.3d 1176, 1194 (10th Cir. 2010). "Even intentionally disparate treatment of similarly situated inmates is acceptable under the Equal Protection Clause if there is any rational basis for the practice." *Martin v. Clements*,

13

No. 10-cv-03139-RBJ-CBS, 2011 WL 6968160, at *4 (D. Colo. Nov. 28, 2011) (citing *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995)).

As explained above, a myriad of factors influences where an inmate may fall on the GRL. Accordingly, the mere allegation that some offenders who have already been in treatment or who have not reached their PED have been admitted to SOTMP is insufficient to show that the Defendants acted arbitrarily.

To the extent Fisher's equal protection claim relies on an assertion that some inmates have been readmitted to treatment before he has been initially admitted, AR 700-19(IV)(I)(5) specifically provides that an inmate may be readmitted to treatment if he meets certain conditions. This is an objectively reasonable policy given that one of SOTMP's goals is "reduce recidivism and enhance public safety" via sex offense specific treatment. *See* AR 700-19(I). Further, factors such as disabilities, medical needs, native language, institutional behavior, and risk of sexual recidivism may affect a particular offender's treatment needs, and therefore, the availability of spots in SOTMP. AR 700-19(D)(1), (F). The availability of treatment and CDOC's desire to meet each inmate's particular needs are not objectively irrational grounds for prioritizing treatment opportunities. *Kansas Penn Gaming*, 656 F.3d at 1216 (noting that the standard is objective, and courts do not inquire into the actual motivations of the government actor when determining whether there was a rational basis for the challenged conduct).

To the extent Fisher may be challenging COVID-19 exceptions that were allegedly made for certain inmates in 2021, CDOC was managing the needs of inmates during a novel pandemic. Expediting access to SOTMP through exceptions to normal protocols during a global pandemic is not objectively irrational. *See, e.g. Hernandez v. Grisham*, 508 F. Supp.3d 893, 990-91

(D.N.M. 2020) (closing schools and issuing phased reentry guidance was not objectively irrational in light of the government's goal of limiting the spread of COVID-19). If these inmates are "slow-rolling" the program as Fisher alleges, their behavior as private citizens does not constitute government action, and therefore, it is not subject to limitation under the Equal Protection Clause. *Vacco v. Quill*, 521 U.S 793, 799 (1997) (stating that the Equal Protection Clause limits government conduct).

Because Fisher has not adequately alleged that the Defendants lacked a rational basis for their conduct, his equal protection claim fails on these grounds as well.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Court grant this motion and dismiss (1) all claims against Defendant Kline, and (2) the equal protection claim against all Defendants.

Respectfully submitted March 4, 2024.

        PHILIP J. WEISER
        Attorney General

        s/ *Amy E. Adams*
        AMY E. ADAMS*
        ANN C. TOUSIGNANT STANTON*
        Assistant Attorneys General
        Attorneys for the Defendants
        1300 Broadway, Tenth Floor
        Denver, CO 80203
        Telephone: (720) 508-6000
        E-Mail:  amy.adams@coag.gov;
        ann.stanton@coag.gov
        *Counsel of Record

# CERTIFICATE OF SERVICE

This is to certify that I have served **DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF NO. 9) UNDER RULES 12(B)(1) AND 12(B)(6)** upon all parties herein by e-filing with the CM/ECF system maintained by the court on March 4, 2024, and by depositing same in the United States mail, postage prepaid, at Denver, Colorado, on March 5, 2024, addressed as follows:

Jeremy Fisher, #164296
Fremont Correctional Facility
PO Box 999
Canon City, CO 81215-0999
*Plaintiff Pro Se*

*Courtesy Copy via email:*
Anthony DeCesaro, CDOC

*s/ Jennifer J. Kaercher*