IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02030-PAB-MDB

JEREMY FISHER,

    Plaintiff,

v.

MOSES ANDRE STANCIL, CDOC EXECUTIVE DIRECTOR,
LACY MONDAY, CDOC DIRECTOR OF CLINICAL SERVICES
LEONARD WOODSON III, CDOC ASSISTANT DIRECTOR OF CLINICAL SERVICES,
AMANDA RETTING, CDOC ADMINISTRATOR OF SOTMP, AND
KIMBERLY KLINE, CDOC CHIEF OF BEHAVIORAL HEALTH AND SOMB CHAIR,

    Defendants.

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT (ECF NO. 60) UNDER RULES 12(B)(1) AND 12(B)(6)**

Defendants Moses 'Andre' Stancil, Lacy Monday, Leonard Woodson, III, Amanda Retting, and Kimberly Kline (the "CDOC Defendants"), by and through their counsel, the Colorado Attorney General, respectfully submit this motion to dismiss Plaintiff's Third Amended Complaint at ECF No. 60 (the "Complaint"). The CDOC Defendants move to dismiss all claims against Defendant Kline in her role as Sex Offender Management Board ("SOMB") chair under Rule 12(b)(1), and all claims against the CDOC Defendants under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

Fisher is an inmate currently incarcerated at the Fremont Correctional Facility ("FCF") in the custody of the Colorado Department of Corrections ("CDOC"). (ECF No. 60, p. 2). He filed the Complaint pursuant 42 U.S.C. § 1983 asserting that the CDOC Defendants, in their official

capacities, violated his Fourteenth Amendment rights to procedural due process (Claim One) and substantive due process (Claim Two). Both claims are premised on the allegation that Fisher has not been admitted to sex-offender treatment in CDOC custody. (*Id.* at 3-10).

Fisher alleges that, in 2014, he was sentenced under the Colorado Sex Offender Lifetime Supervision Act of 1998 ("SOLSA"), Colo. Rev. Stat. §§ 18-1.3-1001 to 1012. (*Id.* at 6). SOLSA requires that he undergo sex-offender treatment as part of his sentence. § 18-1.3-1004(3), C.R.S. 2023)). He asserts that he must successfully progress in CDOC's Sex Offender Treatment and Monitoring Program ("SOTMP") to be eligible for parole. *See* § 18-1.3-1006(1)(a), C.R.S.

Fisher further asserts that he became eligible for parole in January 2023, but because he has not yet been admitted to SOTMP, he has been denied parole twice. (*Id.* at 7, ¶ 9; p. 8, ¶¶ 11-12). He contends that the CDOC Defendants have not been transparent about how long he must wait to access SOTMP. (*Id.* at 9, ¶ 23). He also asserts that, although he has an impeccable disciplinary record and a low risk-assessment score, he fears that he may never get treatment because there are fewer facilities and staff offering treatment now than in 2018. (*Id.* at 7, ¶ 9; 9, ¶ 22). He alleges that the CDOC Defendants have "enforced a policy and practice of arbitrarily depriving [him] of statutorily mandated treatment." (*Id.* at 5-6).

At the same time, Fisher admits that CDOC enacted Administrative Regulation (AR) 700-19(IV)(E)(1) to govern who will be given priority for admission to SOTMP.[1] (*Id.* at 8- 9,

---

[1] Although Fisher cites to AR 700-19(IV)(E)(1), it appears he intends to refer to AR 700-19(IV)(F)(1). As of May 1, 2024, the prioritization of offenders for entry into the SOTMP is found at section (IV)(F)(1), while section (IV)(E)(1) addresses the way the SOTMP team determines treatment recommendations and individualized treatment goals. *See* AR 700-19, *Sex Offender Treatment and Monitoring Program,* at 4, https://drive.google.com/file/d/1pbnJmLLLr0Dc3fnv25o_eJrlcKDXPRcV/view.

2

¶ 17 & n.3). He asserts that AR 700-19 dictates that "prisoners who have not taken the SOTMP will be given priority over the prisoners who have." (*Id*.). He further acknowledges that CDOC officials maintain a "Global Referral List" ("GRL") to prioritize inmates because there are a limited number of treatment slots available. (*Id.*). However, he alleges that the GRL is "flawed", "broken," and "antiquated." (*Id.* at 7, ¶ 5; p. 9, ¶ 19). Fisher therefore seeks an injunction ordering the CDOC Defendants to: (1) place him in SOTMP immediately; (2) allow him to be considered for parole without first progressing through treatment; (3) begin tele-health treatment for him and other similarly situated offenders; and/or (4) authorize him to seek a SOMB-approved provider to treat him while he is in custody, at CDOC Defendants' expense. (*Id.* at 11).

       Fisher's claims should be dismissed for two reasons. First, his claims against Kline in her official capacity as SOMB chair are barred by the Eleventh Amendment, so the Court lacks subject-matter jurisdiction over them. Second, Fisher fails to allege plausible, non-conclusory facts to support an inference that his procedural or substantive due process rights are being violated with respect to CDOC's management of SOTMP and the GRL. For these reasons, CDOC Defendants respectfully request that the Court dismiss Fisher's Complaint.

---

This court may take judicial notice of CDOC regulations. *See Reynolds v. Colo. Dep't of Corr.*, No. 12-cv-02558-PAB-KMT, 2015 WL 5168783, at *2 n.4 (D. Colo. Sept. 3, 2015) (taking judicial notice of AR 850-04). Additionally, because Fisher refers to AR 700-19 and this regulation is central to the Complaint, it may be considered in a Rule 12(b)(6) motion. "When a document is referred to in the complaint and is central to the plaintiff's claim, the court has discretion to consider the document as part of the pleadings." *U.S. Olympic Comm. v. Amer. Media, Inc.*, 156 F. Supp. 2d 1200, 1204 (D. Colo. 2001) (citing *Prager v. LaFaver*, 180 F.3d 1185, 1188-89 (10th Cir. 1999)).

## **STANDARD OF REVIEW**

A court may dismiss a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The determination of a court's subject-matter jurisdiction is a threshold question of law. *Madsen v. United States ex rel. U.S. Army Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). The party invoking a court's jurisdiction bears the burden of proof. *Marcus v. Kansas Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999). If the opposing party challenges the jurisdiction of the court as a matter of law, the court must accept the factual allegations as true and determine whether those facts state a claim over which the court has jurisdiction. *Amoco Prod. Co. v. Aspen Grp.*, 8 F. Supp. 2d 1249, 1251 (D. Colo. 1998).

A court may also dismiss a complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. To avoid dismissal, a complaint must set forth factual allegations that, when taken as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Where the facts pled are "merely consistent with" liability, the complaint "stops short of the line between possibility and plausibility." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 557 (2007)). Conclusory allegations are insufficient to overcome a Rule 12(b)(6) motion. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

Although the factual allegations in the complaint must be accepted as true and are construed in the light most favorable to the plaintiff, a court cannot assume the role of advocate for a *pro se* litigant. *Hall v. Bellmon*, 935 F.2d 1106, 1109-10 (10th Cir. 1991). A broad reading

4

of the complaint does not relieve the plaintiff of the burden of alleging facts sufficient to state a claim for relief. *Id.*

## ARGUMENT

I. **Fisher's claims against Kline as SOMB chair are barred by the Eleventh Amendment.**

Fisher sues Kline in her official capacities as both the CDOC Chief of Behavioral Health and chair of SOMB, seeking declaratory and injunctive relief. (ECF No. 60, pp. 1, 3, 11). However, the Eleventh Amendment bars Fisher's claims against Kline insofar Fisher sues her as chair of SOMB, so this Court lacks jurisdiction over those claims.

Under the Eleventh Amendment, a state is not subject to suit by its own citizens in federal court absent a waiver of the state's sovereign immunity. *Mt. Healthy City Sch. Dist. Bd. of Educ. V. Doyle*, 429 U.S. 274, 280 (1977). "[T]he Eleventh Amendment bars a suit brought in federal court by the citizens of a state against the state or its agencies, and applies 'whether the relief sought is legal or equitable.'" *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995) (citations omitted). Eleventh Amendment immunity applies to § 1983 suits. *Quern v. Jordan*, 440 U.S. 332, 345 (1979). The Eleventh Amendment "confers total immunity from suit, not merely a defense to liability." *Ambus v. Granit Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993)." It therefore "constitutes a bar to the exercise of federal subject matter jurisdiction." *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000).

The doctrine of *Ex parte Young*, 209 U.S. 123, 158-59 (1908), provides an exception to Eleventh Amendment immunity for "official-capacity actions for prospective relief." *Will*, 491 U.S. at 71 n.10. This exception, however, is not applicable to Fisher's official-capacity claims for declaratory and injunctive relief against Kline. "Under *Ex parte Young*, the state officer against

5

whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *Finstuen v. Crutcher*, 496 F.3d 1139, 1151 (10th Cir. 2007). The *Ex parte Young* "exception applies so long as the defendant officer has 'some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *Chamber of Commerce of U.S. v. Edmonson*, 594 F.3d 742, 760 (10th Cir. 2010) (quoting *Ex parte Young*, 209 U.S. at 157). Thus, unless Fisher makes plausible allegations that Kline had some duty to enforce CDOC regulations and alleged practices as chair of SOMB, Eleventh Amendment immunity applies to bar Fisher's requests for prospective relief from Kline in that role.

For two reasons, Fisher has not shown and cannot show that Kline, as chair of SOMB, has any authority with respect to enforcing CDOC policy regarding SOTMP. First, he cannot demonstrate that SOMB has any enforcement authority over the SOTMP. SOMB is an entity statutorily charged with developing, prescribing, and revising standards associated with sex offender identification, evaluation, treatment, and progress in treatment. § 16-11.7-103(4), C.R.S. By contrast, SOTMP is the specialized sex offender treatment program administered by CDOC for CDOC offenders. AR 700-19, at 1; *see also Allen v. Clements*, 930 F. Supp. 2d 1252, 1260 (D. Colo. 2013) (noting that treatment required by SOLSA is "administered by the SOTMP"). SOTMP treatment must conform to the standards created by SOMB, but SOMB does not perform treatment. *See* § 16-11.7-102(4), C.R.S. Thus, while SOMB may promulgate the standards underlying the SOTMP, it does not enforce any provisions of AR 700-19, including CDOC's prioritization of inmates for sex offender treatment. *See Bertrand v. Kopcow*, 199 F. Supp. 3d 1278, 1285 (D. Colo. 2016) (dismissing SOMB members from suit seeking injunction

to prohibit enforcement of a SOMB standard because SOMB is the promulgating authority and not the enforcing authority: "Thus, there appears to be nothing to enjoin – the promulgation is a historical fact, and the regulations are on the books. Nor could the Court find any authority permitting it to order the SOMB to repeal the challenged regulations."). Fisher's targeting of SOMB for an injunction against the enforcement of CDOC policy is not within the *Ex parte Young* exception and therefore such a claim is barred under the Eleventh Amendment.

Second, even if Fisher could somehow show that SOMB, through promulgation of general standards, was responsible for enforcement of CDOC policies concerning access to and prioritization of SOTMP treatment, he still fails to allege facts supporting that Kline, as SOMB chair, has any responsibility in developing SOMB standards. Colorado law provides that only the SOMB *board*, and not its individual members, has the statutory power to develop standards and guidelines § 16-11.7-103(4). SOMB board members carry out their duties as a group. *Id.* Fisher's conclusory assertions that Kline, as SOMB chair, is "personally responsible for approving and overseeing all SOTMP and mental health providers, public policies, guidelines, systems and standards with regards to sex offenders" (ECF No. 60, p. 4-5) is insufficient to support an official-capacity claim against her under *Ex parte Young*. *See Barrett v. Univ. of New Mexico Bd. of Regents*, 562 F. App'x 692, 694 (10th Cir. 2014) (finding *Ex parte Young* exception inapplicable to plaintiff's claims against board members seeking to enforce the ADA where plaintiff's "general allegations of responsibility to enforce the ADA are insufficient because individual Board members are not empowered to act individually, but must act as 'a body corporate'" under state law).

Fisher's claims against Kline in her official capacity as SOMB chair are barred by the Eleventh Amendment. The Court therefore lacks subject-matter jurisdiction over all of Fisher's claims against Kline in that capacity and should dismiss them under Rule 12(b)(1).

**II.   Fisher fails to state claims for relief against the CDOC Defendants because he does not allege plausible, non-conclusory fact to support his due process claims.**

Claim One and Claim Two are also deficient because Fisher fails to allege facts to support the claim that the CDOC Defendants violated his due process rights.

**A.   Relevant Law**

The Fourteenth Amendment to the U.S. Constitution provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To determine whether an inmate's due process rights have been violated, courts must initially consider whether inmate has been deprived of a protected liberty interest, albeit a liberty interest diminished by needs of the prison environment. *Allen*, 930 F. Supp. 2d at 1264; *Firth v. Shoemaker*, 496 F. App'x 778, 785 (10th Cir.). If the inmate makes that showing, the court must then determine whether the inmate's allegations plausibly support the conclusion that (1) he was denied constitutionally adequate process; or (2) due to defendants' deliberate indifference, he was deprived of his liberty interest "in a manner shocking to the judicial conscience." *Allen*, 930 F. Supp. 2d at 1264. "[T]o satisfy the 'shock the conscience' standard" there must be "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Doe v. Heil*, 553 F. App'x 831, 841, 843 (10th Cir. 2013). (citation omitted).

Here, even assuming, without conceding, that Fisher has a liberty interest in receiving SOTMP treatment, he does not explain how the CDOC Defendants allegedly failed to provide

8

adequate procedural safeguards or how their conduct might betray such deliberate indifference that it shocks the judicial conscience.

### B. Fisher has not stated a procedural due process claim.

To evaluate whether a plaintiff has stated a procedural due process claim, courts consider three factors. *Allen* 930 F. Supp. At 1269 (citations omitted). First, they must consider the private interest affected by official action. *Id.* Second, they must consider "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.* (quoting *McMillan v. Wiley*, 813 F. Suppp.2d 1238, 1249 (D. Colo. 2011)). Third, they must consider the benefits and burdens of mandating that the state follows different or additional procedures. *Id.* To permit courts to evaluate the second factor, a plaintiff must describe how the procedures employed were deficient or explain how the defendants failed to follow proper procedures. *Id.* If the plaintiff does not do so, he has not stated a claim for relief. *Id.* Here, Fisher has failed to allege facts that would allow this court to evaluate the second factor of the applicable standard.

With respect to the second factor, he makes a sweeping allegation that the CDOC Defendants have "specifically failed to adhere to the policies of SOLSA" and have operated "the [GRL] in a manner contrary to the letter and spirit of SOLSA and AR 700-19," but he does not explain how the CDOC Defendants misapplied or deviated from applicable law. (ECF No. 60, pp. 3-4). He also asserts, without factual support, that the CDOC Defendants have deprived him of the opportunity to "participate in SOTMP without notice, without meaningful periodic review of the deprivation of treatment, and without an opportunity to contest the deprivation of treatment." (*Id.* at 4-5). But he does not explain how he has been deprived of these safeguards.

### 1. Fisher had notice there was a waiting list for treatment.

With respect to notice, AR 700-19 (IV)(F)(1) *expressly notifies* inmates that they will be prioritized for treatment based on several factors. They include: "(a) Parole eligibility date; (b) Risk for sexual recidivism; (c) Prior SOTMP treatment opportunities; (d) Institutional behavior"; and (e) "Ancillary treatment needs e.g. mental health [and] substance use disorder treatment." *Id.* And AR 700-19(IV)(C)(8)-(9) *also notifies* inmates that certain "treatment qualifiers" may make them lower priority or render them temporarily unable to participate due to medical issues. In addition, AR 700-19(IV)(H)(1)-(5) describes the "treatment tracks" offered according to particular inmates' risk for sexual recidivism and treatment needs as well as specialized services offered to account for an inmate's gender, age, language, abilities, health, and individual needs. Given that the factors considered in prioritizing treatment are laid out in AR 700-19, and Fisher has not identified any particular deviations from the AR, he has not supported the claim that he was deprived of notice that there is a waiting period for treatment.

### 2. Fisher has not provided any factual support for the claim that the CDOC Defendants do not conduct periodic reviews.

With respect to periodic reviews, Fisher makes a bare assertion that the CDOC Defendants have made "a conscious decision not to remedy" the GRL "situation," but he fails to articulate what conduct might support this claim. (*Id.* at 7, ¶ 5). In fact, AR 700-19(IV)(N) obligates SOTMP staff to "work with the SOTMP Quality Management Program Coordinator to identify areas for improvement, develop action plans . . . and implement [them]."

Giving his allegations liberal construction, he may be asserting that the CDOC Defendants know GRL is "broken" and have declined to fix it because, according to the allegations in the Complaint, AR 700-19 states that "prisoners who have not taken the SOTMP

10

will be given priority over prisoners who have" but prisoners "who have taken SOTMP previously are being prioritized" over him. (*Id.* at 8, ¶¶ 17-18). However, AR 700-19 states no such thing; rather, it provides that prior SOTMP treatment opportunities constitute one of several factors that play a role in prioritization. *See* AR 700-19(IV)(F)(1).

Fisher may also be asserting that the GRL is "broken" because "it has been unable to provide treatment to offenders within a reasonable period of time." (*Id.* at 9, ¶ 19). But the GRL is a prioritization system implemented to manage limited resources according to delineated factors. It can only prioritize the limited resources available. It cannot create additional resources. The fact that there is wait time, alone, does not make it plausible that Fisher's place on the GRL is not reviewed at periodic intervals.

### 3. Fisher has had an opportunity to contest the denial of treatment.

With respect to the opportunity to contest the denial of treatment, Fisher concedes that he has been given such an opportunity. He alleges that he has filed three grievances on this issue, and CDOC has responded to his allegations in writing each time. (Id. at 7, ¶ 7). Thus, he has been heard by CDOC staff.

### 4. Fisher's claim is distinguishable from cases in which plaintiffs have plausibly pleaded procedural due process violations.

The Complaint's language regarding notice, periodic review, and the opportunity to contest the deprivation of treatment appears to be lifted directly from *Lerner et al. v. Williams et al.*, No. 22-cv-888-NYW-NRN, 2023 WL 3855338, *4 (D. Colo. Feb. 3, 2023). In *Lerner*, two plaintiffs alleged (among other things) that, because they had been assigned to facility that did not offer SOTMP, and facility placement was not a factor considered under AR 700-19, they would never be eligible for parole for reasons unrelated to priorities stated in AR 700-

11

19(IV)(F)(1). *Id.* at *7, *report and recommendation adopted in Lerner et al. v. Stancil et al.*, 2023 WL 3595998. On those grounds, this Court held that the plaintiffs had stated a plausible procedural due process claim. *Id.; see also Tillery v. Raemisch,* No 16-cv-0282-WJM-STV, 2017 WL 217816, at *5-6 (D. Colo. Jan. 18, 2017) (same).

Here, unlike the plaintiffs in *Lerner* and *Tillery*, Fisher has not alleged plausible facts stating how the CDOC Defendants deviated from AR 700-19, why such deviation might permanently deprive him of parole, or why different safeguards were necessary. He states only that treatment has been delayed for fifteen months past his parole eligibility date, he has been denied parole twice due to lack of treatment, and he does not know where he is on the GRL. The bare allegation that Fisher's treatment had been delayed, but he is on a waiting list that prioritizes inmates for receipt of CDOC's limited treatment resources is insufficient to trigger due process concerns. *See Wismer v. Stancil*, No. 22-cv-3217-WJM-SKC, 2023 WL 7279355, at *5 n.4 (D. Colo. Nov. 3, 2023) (noting that a bare allegation that the plaintiff had not received treatment, and he was on the GRL but did not know when he would be admitted was insufficient to state a procedural due process claim because the plaintiff did not plausibly allege he was "without treatment"); *see also McDaniel v. Dauffenbach*, No. 20-cv-02033-DDD-KLM, 2023 WL 4908370, at *3 (D. Colo. 2023) (stating that "the denial of sex offender treatment is not an atypical hardship in prison life nor a major change in conditions of confinement" under Colorado's statutory framework). Thus, Fisher has not stated a procedural due process claim.

  C. **Fisher has not stated a substantive due process claim.**

Fisher also asserts that the CDOC Defendants have denied his rights by "arbitrarily depriving him of statutorily mandated treatment despite actual knowledge that such deprivation

12

would make him ineligible for parole, causing him to unnecessarily languish in prison indefinitely." (ECF No. 60, pp. 5-6, 7, ¶ 4).

When evaluating whether the CDOC Defendants' acted with such deliberate indifference that their conduct shocks the judicial conscience, *Allen*, 930 F. Supp. 2d at 1264, this court must be mindful of the need for restraint in defining the scope of substantive due process claims, a concern that state tort law not be replaced by section 1983 claims, and the need to defer to CDOC in making decisions about inmate care that impact public safety. *Id.* at 1270 (citing *Graves v. Thomas*, 450 F.3d 1214, 1220-21 (10th Cir. 2006).

Here, Fisher fails to plead the necessary facts to make a showing that the CDOC Defendants placed him GRL despite knowledge that relying on it would make him ineligible for parole, causing him to remain in prison indefinitely. (*See id.* at 7, ¶ 5). In fact, as explained above, he has not set forth factual allegations to support that claim that he will remain in prison indefinitely due to his parole status. By Fisher's own telling, he is considered ready for the SOTMP, he is currently on the Global Referral List, and he is simply awaiting admission. (*Id.* at 7, ¶¶ 5, 9). It is true that he alleges he has been waiting for fifteen months and does not know where he is on GRL. (*Id*. at 7, ¶¶ 9, 21). But this is not enough to support the claim that Fisher is likely to be incarcerated indefinitely and, for that reason, shock the judicial conscience; moreover, the public interest in ensuring that sex offenders receive treatment before release must prevail over Fisher's desire to receive immediate treatment. *See Wismer*, 2023 WL 7279355, at *5 n.4; *cf. Allen*, 930 F. Supp. 2d at 1267 (a wait time of one-and-a-half years to reenter treatment was not "of sufficient severity to implicate a protected liberty interest.").

Further, Fisher does not challenge the constitutionality of the Global Referral List itself, nor of AR 700-19 or the criteria outlined therein for prioritizing inmates on the GRL. (*See generally id.*). To the extent Fisher has concluded that CDOC is not following those criteria because inmates who have already been admitted SOTMP have been readmitted, as previously noted, several regulatory factors properly influence an inmate's place on the GRL. *Id.* Therefore, the fact that some inmates may have been readmitted to treatment is not evidence the GRL is arbitrarily applied and enforced in a manner out of step with AR 700-19. (*Id.* at 8, ¶¶ 17-18). Fisher makes no allegations concerning these unidentified offenders' risk of recidivism, parole eligibility dates, or health status — factors that are properly considered under AR 700-19(IV)(F)(1).

Thus, Fisher has not alleged sufficient facts from which the Court can infer that the CDOC Defendants are knowingly and arbitrarily prioritizing other inmates over him, causing him to remain in prison indefinitely. Because he fails to allege plausible, non-conclusory facts to support an inference that the CDOC Defendants' prioritization of inmates violates AR 700-19, his claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the CDOC Defendants request that this Court grant this motion and dismiss all claims against Defendant Kline and the remaining CDOC Defendants.

Respectfully submitted June 11, 2024.

              PHILIP J. WEISER
              Attorney General

              s/ *Amy E. Adams*

AMY E. ADAMS*
ANN C. TOUSIGNANT STANTON*
Assistant Attorneys General
Attorneys for the CDOC Defendants
1300 Broadway, Tenth Floor
Denver, CO 80203
Telephone: (720) 508-6000
E-Mail:   amy.adams@coag.gov;
ann.stanton@coag.gov
*Counsel of Record

15

## CERTIFICATE OF SERVICE

This is to certify that I have served **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT (ECF NO. 60) UNDER RULES 12(B)(1) AND 12(B)(6)** upon all parties herein by e-filing with the CM/ECF system maintained by the court on June 11, 2024, and by depositing same in the United States mail, postage prepaid, at Denver, Colorado, on June 12, 2024, addressed as follows:

Jeremy Fisher, #164296
Fremont Correctional Facility
PO Box 999
Canon City, CO 81215-0999
*Plaintiff Pro Se*

*Courtesy Copy via email:*
Anthony DeCesaro, CDOC

 *s/ Jennifer J. Kaercher*

16